So, I would like to begin by thanking you for taking this case as a pro bono lawyer and for doing a very good job in the course of doing so. Thank you. Thank you, Your Honor. And aren't you happy you don't have to figure out the bankruptcy code for us? I am indeed, Your Honor. May it please the Court, I am Kelly Volkar from O'Melveny & Myers. On behalf of Petitioner Epifanio Martinez Perez, I would like to try to reserve three minutes for rebuttal. Because no adverse credibility finding was made against him— All right, but isn't that the core of this case? I mean, it's a crazy case. I mean, he has an incredibly complicated story. He tells it quite consistently, but we also know he has severe mental health problems that have to do with delusions and paranoia and all that. So my understanding of matter of J—is it matter of J-R-R-A, that if the applicant is deemed incompetent, they should accept that the applicant believes what he has presumed, but that doesn't mean that you believe that what happened is true. Now, so there are two questions about that. One is, we've never approved or disapproved that provision, that ruling. Are you challenging it? You're not. No, Your Honor, I'm not. Okay. So we're going to assume that it's governing. Yes, Your Honor. So I don't see how you can just take the ordinary credibility rules, then, and plug them in. Well, Your Honor, I believe that is one of the major questions before this Court, because no circuit court has yet reviewed how matter of J-R-R-A would be applied with credibility rules as we understand— Well, as I understand what happened here, and I'm going to simplify, I just want to put aside fear for future persecution, put aside whether it was on account of a protected status, et cetera. What the I-J and the BIA did was say, with respect to your past persecution claims, we'll assume everything you're saying is true. It doesn't amount to past persecution. Yes, Your Honor, the I-J and BIA did say that. However, the standard that they applied shows that they were essentially requiring physical harm, and that's— Well, I mean, but I just want to—that's not a lack of credibility determination. That's—you're arguing there wasn't substantial evidence to support that conclusion. That's correct, Your Honor. I just want—I want to focus on the credibility thing for a second. With respect to the second claim, which is that you're saying we had past persecution, but even if I didn't, I have a reasonable fear of future persecution. With respect to that one, as I understand what the BIA and the I-J did, was they didn't—they did make a credibility determination. And the credibility determination was, well, we—we grant that you believe what you say is true, but given the other evidence in the record, we don't find objectively that this—that you really do have a fear of future persecution. So aren't there two separate analyses? One does involve credibility, the other one does not. Well, Your Honor, I think that's reading a bit more into the I-J's opinion because the I-J has a section on credibility, and in that section, the I-J doesn't explicitly make a credibility finding beyond saying that they find—that the I-J found my client to be subjectively genuine in his belief of the version of events. Right, but when he gets to whether or not you are liable to face persecution in the I-J's opinion here, which is that the I-J essentially said, I'm going to find you subjectively genuine as a safeguard under a matter of J-R-R-A, but I simply don't believe you. And I think— Why can't he do that? Well, I thought what—well, first of all, the main thing that he—in the category that Judge Hurwitz was talking about was that he said there is no objective evidence that any of these people really had anything to do with the Mexican mafia. Well, Your Honor, I would point to the country conditions evidence that he submitted, which states that members of Mexican organized crime operate with impunity and thus are unlikely to— Mother-in-law and all of them were specifically—were members of the Mexican mafia and doing this because he— Ratted them out. Yes, ratted them out. And that's the piece that the district—that the I-J never bought into. Yes, Your Honor. Whether these things happened, your description of motives, I have—I note objective evidence. And I do understand matter of J-R-R-A to say that you have to meet your burden of proof based on the objective evidence of record. And there isn't any objective evidence that any of these people had anything to do with the Mexican mafia, is there? Your Honor, if the I-J wanted to—or if the I-J needed objective corroborating evidence on that point, then under this Court's precedent in Ren v. Holder, the I-J was obligated to inform my client that he— I think that's your best argument, actually. But he did—didn't he leave the record open or say, do you need more time or anything else you want to put in or something like that? But you say he should have specifically said, I need this. Yes, Your Honor. And I think Ren v. Holder is very instructive on this point. In Ren v. Holder, the I-J said, I'm about to find against you, you need these three pieces of evidence, you've testified that you can obtain these three pieces of evidence, I'm going to continue the case so that you can submit this evidence. Had a hearing later on, and at that later hearing, the— Was that argument exhausted to the BIA? I would say yes, Your Honor. How? In the brief below, my client argued in a substantial portion of his brief that he submitted sufficient corroborating evidence. And I would say that under this Court's precedent, which essentially says you have to put the BIA on notice of what you're arguing, him arguing that he did provide sufficient— Isn't that a different argument than I could get you additional corroborating evidence if you need it? In other words, and I'm not sure, I'm just not sure a Ren argument has been preserved. I thought your better argument here was that there was no basis in the record for the I-J to conclude that they weren't members of the Mexican mafia. Yes, Your Honor. In other words, and on the other hand, it seems to me the burden was on your client to establish that they were, isn't it? Yes, Your Honor. No, so then I want to get back to the credibility issue, because this is where you started. He listens to your client and says, I think you believe what you're saying is true, but I don't believe you. And so at that point, isn't there enough—hasn't your client failed in his—he made a very specific credibility finding here, as you say. I heard you. I think you believe all this is true, but I don't believe you. As to some things, at least. As to some things that you said. Well, Your Honor, I would say that that doesn't have support under the court's current credibility finding precedent, because the I-J needs to—in fact— All you said is an outlandish story. You have mental illness. It's an outlandish story. I'm sure you've imagined it. See, he doesn't say those words precisely, but he comes pretty close. But I just don't really think that's what happened. Why isn't that good enough in terms of the specificity of findings? Well, Your Honor, I think— Ran aside. To bring it to a broader scale, then, in what scenario would someone suffering from a mental health illness be able to— Well, you'd have to object to evidence. I mean, for example, I mean, there is sort of a hole in the sense that—and this is particularly sensitive and difficult because, you know, there aren't a lot of people who are going to give you the affidavits that so-and-so told me he was a member of the Mexican Mafia. For the sister, who seemed quite concerned and quite sensible, said a lot of things, but she didn't say any of these people were members of the Mexican Mafia. Your Honor, she did say that she fears if he were to be returned to Mexico that he would accuse the wrong person and be harmed, and that, in fact, she believes if he were sent back to Mexico, it would be the equivalent of a death sentence. And that may have been all she was comfortable saying. I mean, that's what's very sad about this case, which may be true because the guy is so impaired, it appears. I mean, the other thing that struck me about the record here is that he did keep telling the same story in very great detail several different times, very consistently, which would ordinarily lead to a credibility determination. Yes, Your Honor, and that's why I think the credibility piece is so critical here, because under this Court's precedent and under most immigration cases, when typically all we have to go on is the applicant's individual belief, and that's why credibility finding is so important. It should be under these circumstances, and I don't think the BIA said much in its opinion in JRRA, but because of the peculiarity of this, should the IJ have to say what he doesn't believe and why, simply on plausibility grounds? So that's really what's going on here. He's really saying, we know you have mental health problems, we know you're delusional, I believe you believe everything you said, but some portion of it I find so implausible that unless you come up with some objective evidence, I'm not going to believe it. Is there some procedural requirement that he should need to spell out what and why? Yes, Your Honor, and that's where I would direct the Court back to Ren V. Holder, which explicitly states what procedure the IJ should have followed here, which is to tell the applicant But Ren only applies when the IJ says, I found you credible, but you don't make sufficient corroboration. Ren doesn't apply when the IJ says, I don't find you credible. That's what our subsequent case law says, right? Yes, Your Honor. And the IJ here says, I'm sure you believe this story, but it's so outlandish that I don't find you credible. And there's no objective evidence that it's true. So under those circumstances, does Ren apply? Yes, Your Honor. I think that the INA in particular provides two options. Either an IJ explicitly makes an adverse credibility finding or the applicant is presumptively credible on appeal. Right. Here he makes, as you said, he made an adverse, it may not have been sufficiently supported. That's a separate issue. He made an adverse credibility finding. I disagree, Your Honor. I don't think the IJ made an adverse credibility finding. That's just certain things he did. He certainly didn't believe. The one place where he gets specific is that I find no evidence that any of these people were a Mexican Mafia and I don't believe it. Yes, Your Honor, but the IJ does not say I don't believe him or that I don't find him credible on this point. On the basis that they're not. It's not the same as not believing him? There's a whole section of the IJ opinion entitled credibility. Right. And there, not once does the IJ say that my client is not credible. And that's the main point that I want to highlight and emphasize to the Court. He says very specifically. I'm sure he's not lying in the sense that he's not making up the story. He believes it to be true. But the Court finds many of the details of Respondent's testimony are difficult to believe and appear like to be, appear to be the result of his mental health difficulties. That's, there accordingly, the Court must look to the objective evidence to see whether he, and he, I don't find any. So he doesn't find him credible. He says he's not credible and he hasn't provided any objective evidence to support his case. I think it's a fair reading of that section, isn't it? I respectfully disagree, Your Honor, because I think when you look at the Immigration and Nationality Act, which sets up this binary system, and you look at, you know, this Court's precedent as well as matter of JRRA, all of them point to only two options, which is either you explicitly state that they're not credible or they're presumptively deemed credible. And nowhere does the IJ say there that he finds him not credible. He just says that he finds that he believes his subjective version of events. And I would submit that's insufficient. Very briefly.  Oh, I'm sorry. Go ahead. I'm just going to say, given his deficits, it's not an either or situation. He's sincere. That's what the ILJ said. But he said it just doesn't add up objectively to that, for example, these people are members of the Mexican mafia. Why is it so difficult to accept that kind of distinction between, I think he's a very He's ill. These stories reflect, no doubt, his illness. I cannot reach the bottom line in his favor, which clearly the ILJ has said that. Well, Your Honor, I would just state that the immigration system as it is currently structured does not allow for that sort of third category or in-between category. So then you are, I mean, that's why I began by asking you whether you're attacking the BIA opinion in JRRA. You said no, but the answer now is yes. But I want to ask a question. Assume his whole story is true, because that's what the IJ did eventually. After all this muttering, he said, well, I'm just going to assume it's true. What's the cognizable social group, first of all? Or should we skip right to Kat? Because it seems hard that you're going to come up with a cognizable social group. And also, why is the past persecution determination wrong? Well, Your Honor, to start with, first of all, the court could find under the Kat relief without having to find the nexus requirement. But I do believe the court could also find that he was a member of at least two particular social groups, legally cognizable groups, which were members of the Martinez Soto family who have cooperated with law enforcement and also government informants against Mexican organized crime. And I would say that based on several of this court's prior opinions, which have found very similar groups to be. I mean, we've been really hard-nosed about this, maybe too much so. But the unbanked case, the whole point was that this person was actually testifying, right? She was a known person. How does this meet up with that? Well, Your Honor, I would state by him walking into several police stations in Mexico and consistently stating that his family members were members of the Mexican mafia, he was openly identifying himself as someone who was willing to inform against the Mexican organized crime groups. And therefore, he, as his expert report says, painted a target on his back for anyone who was a member of these Mexican organized groups, which want to operate in the shadows. I mean, the Martinez family one is sort of interesting. The other one, the broader one, hasn't it been rejected repeatedly? Your Honor, I would say it has been rejected in certain circumstances, but in circumstances such as this one, it could still be viable for the reasons I've stated in my brief. But I also think that he also clearly fits under the family one. But in an odd way, you're not claiming it's because he's a member of the Martinez family, but in a sort of you kind of are saying it's because. You're essentially saying if he wasn't a member of the Martinez family, his people wouldn't be so mad at him. They're particularly mad at him because he's. Skip to the last part. Put aside cat for a second. I understand your cat argument. On your withholding argument, how do we get the governmental nexus or failure to protect into this? Yes, Your Honor. Well, I would say that earlier, Your Honor mentioned that he had asked the police for help on multiple occasions. And I would submit that contrary to that, the times when he asked the police for help did not specifically tie to what he claims is his persecution. And instead, there are the instances such as a police officer accepting a bribe from his very persecutor in order. Is that persecution? I would say that that instance is not persecution, but it goes to the government being unwilling or unable to protect him. Either. How do we know he accepted the bribe? We know that they offered him a bribe and we know that they actually protected him in the end. Well, Your Honor, I would respectfully disagree that they protected him. He made such a commotion that he called attention to himself. And then the police officers, as they released him, said, don't come back here, we'll kill you ourselves. I don't think that's very frankly, we're talking about we're talking about the persecution stage. So how do any of those acts add up to persecution? Your Honor, I believe the persecution is when his grandfather pulled a gun out of his pocket and said, I'm going to kill you because you've informed against. Had a gun in his pocket and said that he was going to kill Mr. Martinez-Perez because he was informed. And so I'm trying to find evidence that the government either was participant in that bad act or was unwilling to protect him from that bad act. Yes. And that's what those are my questions about the last stage we're about. Yes, Your Honor. And that's where I get to the bribe, which is that when Mr. Martinez-Perez was able to escape and went to the police for help, they put him in a jail cell and then they indicated a willingness to accept a bribe to allow his very persecutors in there. One officer indicated a willingness to accept a bribe. One officer indicated that, Your Honor. But then there's a continuing pattern of each time he tries to seek help from the police, they push back in some manner, such as the police officers who say, okay, get out of here or we'll kill you ourselves. And other police officers say, who say, we don't want you here. Okay. All right. Thank you very much. Thank you. Interesting case. And thank you again for your pro bono representation. Yes, sir. Thank you. May it please the Court. Chris Buchanan for the United States government. Subjectively genuine testimony is not the same as objective truth. And it is that fallacy that Petitioner builds his argument upon, for that reason his claims fail. Well, address the rent issue. Your Honor, that's, as a matter of- You find somebody incredible because they haven't produced evidence. Isn't that dissent, isn't, why doesn't that trigger rent? Your Honor, setting aside the exhaustion argument- Yes. Set it aside for a second. Yes, Your Honor. The Ollie Wang case makes clear that the threshold determination for a trigger, a rent trigger is a credibility determination. But we don't have that here, that rent didn't address the- Well, I understand that. But what, I mean, for the same reasons that rent made its conclusion. I mean, what we have here is a situation where the judge said, in general, I believe him objectively, but he has all these delusions, and a lot of his stories don't make any sense. But he didn't say what or how, I mean, he was in no way specific. So quite aside from asking for any specific objective evidence, he didn't even give an indication from the way in which he analyzed the evidence, which stories he didn't believe and which stories he did believe. So it was very, he did say at some point, well, maybe you want to give more evidence, but he didn't give anybody a clue as to what it was he was believing and what he wasn't, on strictly plausibility grounds. In other words, this is a, you know, a long and complicated story, and as I said before, he was awfully consistent about it. Now if you're going to reject it, don't you have to say what you're rejecting? Your Honor, recall again that matter of J.R.R.A. is not in dispute, neither the framework nor its application by the immigration judge in this case. And matter of J.R.R.R. I think the second part is, the application by this judge is. No, respectfully, Your Honor, the reply brief at page four, note two, specifically states that the petitioner does not contest that the immigration judge correctly applied matter of J.R.R.A. But looking at the framework of matter of J.R.R.A., which is a narrowly tailored effect against the pool that is applicants who have some kind of underlying cognitive defect that J.R.R.A. requires only that where that distortion may arise from the underlying cognitive defect, the immigration judge may not penalize the applicant for the distortion in the same way that that would accrue in the case of an adverse credibility determination, as you've suggested. That safeguard was applied in its totality here. And to go to your question. It seems to me that there is some underlying due process like problem with, and I'm not sure it matters here because he ultimately went on and at least for purposes of past persecution assumed the story anyway. But then with regards to future persecution, he assumed away the Mexican mafia connection. And once you do that, certainly his well-founded fear goes away. So maybe we should focus on that. I mean, the one thing that he clearly rejected on the ground that there wasn't objective evidence was that any of these people that he said were connected to the Mexican mafia were connected to the Mexican mafia. Now, but he didn't tell him that until after the whole case was over. So how was he supposed to know which piece of his long story, and this is obviously a huge part of his long story, was being rejected? So, Your Honor, what comes to my mind is the Second Circuit's recent affirmation of the matter of LAC case, which explicitly rejected the analysis in Wren, and there the Second Circuit observed that the trier of fact oftentimes cannot assess the credibility until the entire case is closed, all the evidence is in. Well, but the Second Circuit may be right. Wren may have been incorrectly decided, but we're in the ninth. Yes. Yes, Your Honor. And we're stuck or we will follow it. Stuck is the wrong word because that makes it seem like we reject it. So if, in fact, we are applying Wren, tell me why it doesn't apply here. Okay. It doesn't apply here because the credibility determination that Wren dealt with is not present here. In Wren, the adverse credibility. This is more so. I mean, the problem here is that you have somebody who you have now determined actually believes what he's saying. So how, but you, because of the intricacies of the story, the IJA says, you know, just thinking about how these pieces fit together, I don't, I know you believe it. I know, well, to be specific, I know you believe that these people are all members of the Mexican Mafia, your grandfather, your father, your mother-in-law, and so on. And I believe that you believe it, but I don't, you know, given the entire story you're telling me, it just seems implausible. How is he supposed to know that you think that's implausible, but you don't think it's implausible that he was in jail in Mexico? I mean, how is he supposed to know what you find plausible and not plausible? Well, Your Honor, look at the evidence that he did present. I'm sorry? The evidence that he did present, the objective evidence. We have a medical record from Almerid, Mexico, that reflects nothing except his fear that his grandfather was trying to poison him. We have— I'm having trouble hearing you. Could you talk— Yes, I'm sorry. Is this better? Thank you. There is the, the objective evidence in this case is remarkably sparse for someone who spent two years in Mexico. The court has presented with a Mexican health record— Mysterious mental health problems. Yes, Your Honor. But the mental, the objective evidence, though, falls consistently short. There is only a Mexican hospital record that reflects only his fear that his grandfather was going to poison him, and then there is only an affidavit, an affidavit from his sister, who the immigration judge found was the primary caregiver in Martinez-Perez's circumstances, and yet, there's no indication whatsoever of, of any retaliatory motive by the family based on 2005 events, nor is there any reference to the, the sort of sinister, subversive— There is in his testimony. Yes, Your Honor, but— So, so the question—so, I agree that he presented some evidence other than his testimony, and that evidence didn't support the Mexican mafia contention. The, the question is, and I don't know the answer to it, under Wren, in this strange circumstance where the, where the IJ says—never says it in any other circumstance—I believe you think everything you're saying is true, but I don't find it to be true. That's what the IJ did here, essentially, and he said, one reason I don't find it to be true, it's an incredible story and you have mental health problems, but none of the stuff you've given me supports it. That's correct, Your Honor. Does Wren, in that circumstance, impose an obligation to say to him, now that you know that, do you have anything else? I don't think so, Your Honor, and the reason is that counsel appointed by the agency provided at all levels of litigation before the agency never asked for more time, never suggested that there was more— But that's the exhaustion issue. I'm trying to figure—and I— Okay. Right. I asked you to assume that the issue was exhausted or preserved by, by, by the things that your colleague said she did. If it was, under that circumstance, does Wren require— No, Your Honor. —that she be given more time? I'm sorry. The corroborative evidence in Wren that was operable was a birth certificate and a, I'm sorry, a bachelor's certificate and a bail receipt, which, and also testimony which counsel represented was available. Well, I mean, it's— Here— But the basic position, is your basic position, I mean, there is an alternative position, which is that under these circumstances, essentially, he has to prove everything by objective evidence. Is that what you're saying? No, Your Honor. That, that is not true. Well, then how could you—I mean, that would be a plausible position in saying, you know, you're so delusional that although I believe you believe what you said, you, I'm not going to accept any, any part of your story just because you say it. And if that's what JRRA means, at least it's, it's coherent, and then you have to go and put on evidence. But if that's not it, then who's going to say what the IJ finds implausible or not? Well, JRRA doesn't— And, and, or at least doesn't have to say so. I mean, he never actually said here, except on the mafia thing, you know, I, I find your whole story about going to jail and the people coming, bribing and, and put, getting put in another cell and trying to put the gun in and all that, I, that's just a crazy story. I don't believe it. He didn't say that. That sounds like a due process argument that faults the JRRA framework by not specifically requiring the immigration judge to set out what is and what is not considered plausible. But that framework has not been, is not in contest. It's not before the court. And it may be that there is a case. All right. I mean, it's, even if we believe everything he said, he loses anyway, so why don't we go to that? Well, well, that is certainly true, Your Honor, whether you take his testimony as, as true for purposes of an analysis or not, he, he fails, he fails under either method. The, it is hard though to see what more the agency could have provided for the petitioner in this case. I'm sorry? It is hard to see what more the agency could have provided in terms of safeguards. We have, we have a, a 70-page decision by the immigration judge. We have counsel provided at all levels. We have multiple continuances. We have the immigration judge. I understand. What I want to know is, let's assume because the IJ did his long and perhaps implausible story, why does he then, because that's what the IJ did with regard to past persecution, right? Your Honor, that's, that is the basis of the board. That is the portion of the immigration judge's decision that the board, that the board affirmed. I thought that's basically all of it with regard to past persecution. And the, the part that he specifically discounted is that these people belong to the Mexican Mafia, which was for future persecution purposes, I think. That's right, Your Honor. They actually sort of divided it on past persecution. He said, everything you've testified to, if I take as true, doesn't establish persecution. And then he says, he does make a credibility determination on the next prong, which is that, was it on account of the Mexican Mafia? That's, that's right. But that, and that's all premised on, on the analytical assumption that his testimony is true for purposes of the analysis. And so, and so it, your Honor is correct. It does not matter. It does not, in this case, it doesn't matter what you do. Okay. So tell me why. Why his claims fail. Because, well, Your Honor, these, well, if taken as true, you have an applicant who consistently interacts with the Mexican police across four different towns, across a seven month period, and in two of those circumstances, he is co-located with the assassins that we're, that he states were hired by the Mexican Mafia to kill him, both in Cuauhtemoc, the second time, and then also in Manuel de Obrado. They all come together and, and yet the Mexican police, the outcome of every single interactions that the Mexican police release him first, separate and apart from his family, and in the Cuauhtemoc incident, they actually place him in protective custody at his request. His testimony is at my request. And so, while there is, there is a, there is a passage of money, if we take that testimony as true, we have to say, what do we do about money changing hands in the Cuauhtemoc jail? But it is beyond dispute that he was released by police separate and apart from his family. He was released first, which enabled him to get to the police station. And so his, his, his claims against the police are that they took money from his grandfather, although they, they certainly didn't enable any kind of harm against him, and then also that they took his own money, because he had to sell his watch to buy a bus ticket to get out of Cuauhtemoc. And so, this is not, this does not evince the, that the Mexican authorities across all these towns, throughout this entire time frame. That's the strongest point, is, is, is the, um, um, unable or unwilling to, to control point. Your Honor, that defeats both the past and the future, as well as it goes to the acquiescence prong of the torture claim as well. So if... And there's substantial evidence in this record to support that, because there's, there, if you take his story as true, then along the way people said to him, no, don't worry, we're not after you, or, at his request, put him in protective custody before the bribe occurred. Yes, that, that's true, that, you know, in, in the record, though, he is, he is sort of threatened in a multifaceted fashion by everybody that he comes across, to include, to include the police. Um, so for example, Emanuel Del Blato, he, he says, even after they dropped him off at the outskirts of the city limits, a police cruiser came by, and then, and then he heard on the radio that they shouldn't help him because he's a violent rapist. Right. Now, the evidence may be, may be susceptible of two interpretations. Yes, Your Honor. I'm just saying that there is, there is evidence in the record, even taking his story as true, that would support the I.J.'s conclusion about the participation of the police, either past or future. Yes, Your Honor. At best, at best, you have two competing narratives, and under those circumstances, this record does not compel the conclusion of future torture or future or past persecution. Just in closing, I would, I would point out only that, uh, in the Aiden case cited by Petitioner in, in the reply brief at page five, this Court made clear that the REAL ID Act swept away, uh, this circuit's doctrine that when an alien crest, testifies credibly to certain facts, those facts are deemed true. That appears to be, uh, based on the reply brief, that appears to be the linchpin of, of Petitioner's claim to a legal authority as to why subjectively genuine testimony, as found by the immigration judge, should nevertheless somehow be transmuted into an objectively historical, accurate, uh, record, and, um, under the Aiden case. But we just established that none of that matters. In other words... Yes, Your Honor. We, that's right. There are multiple... Okay. So why are we worrying about it? Why don't we just take the case as if everything he said was true, uh, um, on the basis of the things that the, that the IJ accepted as true, and decide whether there was a case made out or not. I think that's the simplest, that is the simplest resolution of the case. I agree, Your Honor. Thank you very much. Thank you, Your Honor. Yes, we'll give you a minute of rebuttal. Thank you, Your Honors. I would first like to clarify one point, which is that, uh, specifically, we are not opposing that the IJ followed the letter of matter of JRRA by saying we find Mr., or the IJ said he found Mr. Martinez-Perez subjectively genuine, but then looked to the objective evidence. We are contesting how the IJ then proceeded to apply the case. But why doesn't, well, it would matter if you were, don't we have to start this case by assuming, as the IJ did, that, um, his story is true? Yes, Your Honor. And decide whether you would prevail if it were true. Yes, Your Honor. And then decide whether, um, there was some discounting that went on, uh, at least at the, um, stage of future persecution that, that's pertinent. Yes, Your Honor. And I would also point, uh, the court to Ruano, the Ruano case, um, which specifically states that threats plus, uh, confrontation or other mistreatment can constitute past persecution. And I think that that case is particularly instructive here, uh, because the person was in that case. Still, that's, we still have the, the, um, unable or unwilling and acquiescence problems. Yes, Your Honor. And for that, I would say that, uh, contrary to the government's characterization, the, uh, Mexican police helped him only when he asked about certain charges that were filed against him, but repeatedly did not help him whenever he was seeking, uh, reprieve from his persecutors who followed him throughout the multiple towns. And so that's, and I would, again- I thought he went up and he said, I want you to keep me in protective custody because these people are after me. And they said, okay. But then, Your Honor, the same police officers allowed them access to him, in fact, told his- Your Honor, I would, uh, uh, respectfully disagree in that they, um, showed willingness to accept a bribe and then told his persecutors how they could get into the cell next to him. And also a gun was smuggled- Well, the they is one officer, is it not? Just to be clear. Uh, yes, Your Honor. At least as to the bribe. Yeah. Unclear as to how many officers were involved, uh, in the other aspect of allowing them into the jail cell. And also, uh, when the, uh- But they were never actually allowed into the cell with him. They were, uh, allowed into a cell nearby. And then there was a, a gun that was being smuggled. Right. I understand. But, um, they were, they never were actually placed in the cell with him. Yes, Your Honor. Okay. Thank you both. Um, that's an interesting argument and a hard case. Thank you, Your Honor. Uh, paroles versus sessions is submitted and we are in recess. Thank you. Thank you. Thank you.
judges: Berzon, Hurwitz, Dearie